**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): __23-6636__        Caption [use short title] __Carpenter v Sitek__

Motion for: __Motion for Reconsideration En Banc__

Set forth below precise, complete statement of relief sought:

__Reconsideration of Granting Government's__

__Motion for Summary Affirmance__

MOVING PARTY: __Pro se Petitioner Daniel Carpenter__      OPPOSING PARTY: __Jonathan Sitek US Probation__

☐ Plaintiff        ☐ Defendant

☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: __Daniel Carpenter pro se__      OPPOSING ATTORNEY: __AUSA Neraj Patel__

[name of attorney, with firm, address, phone number and e-mail]

__Daniel Carpenter__

__18 Pondside Lane, West Simsbury, CT 06092__

__dcarpentermail@gmail.com  860-573-7770__

Court- Judge/ Agency appealed from: __District of Connecticut Hon Judge Jeffrey Alker Meyer__

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?      ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

__/s/ Daniel E. Carpenter__   Date: __May 7, 2024__     Service: ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 23-6636-pr

## United States Court of Appeals

*for the*

## Second Circuit

———————————

DANIEL E. CARPENTER,

*Petitioner-Appellant,*

— v. —

JONATHAN SITEK, HONORABLE, Supervisory U.S. Probation Officer,

*Respondent-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## MOTION FOR RECONSIDERATION *EN BANC*

DANIEL E. CARPENTER
*Petitioner-Appellant Pro Se*
18 Pond Side Lane
West Simsbury, Connecticut 06092
(860) 573-7770

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION AND RULE 35(b)(1) STATEMENT ........................... 1

I. THE MASSACHUSETTS COURT LACKED SUBJECT MATTER JURISDICTION ............................................................. 7

II. THE SUPREME COURT'S DECISION IN *SMITH v. UNITED STATES* REQUIRES THIS COURT TO VACATE PETITIONER'S CONVICTION FOR VIOLATIONS OF THE VICINAGE CLAUSE .............................. 14

III. PETITIONER'S APPEAL SATISFIES ALL OF THE CRITERIA UNDER THE SAVINGS CLAUSE OF 28 U.S.C. § 2255(e) ................................................................... 16

IV. CONCLUSION ................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adams v. United States,*
    372 F.3d 132 (2d Cir. 2004) ........................................................... 16

*Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006) ................................................................... 8, 11

*Berger v. United States,*
    295 U.S. 78, (1935) ......................................................................... 2

*Blackledge v. Perry,*
    417 U.S. 21 (1974) ........................................................................ 11

*Cleveland v. United States,*
    531 U.S. 12 (2000) ..................................................................... 9, 14

*Dhinsa v. Krueger,*
    917 F.3d 70 (2d Cir. 2019) .............................................................. 3

*In re 650 Fifth Avenue,*
    934 F.3d 147 (2d Cir. 2019) ............................................................ 1

*Jones v. Hendrix,*
    599 U.S. 465, 143 S. Ct. 1857 (2023) ............................................. 3

*Kontrick v. Ryan,*
    540 U.S. 443 (2004) ........................................................................ 5

*McEvoy Travel v. Heritage Travel,*
    904 F.2d 786 (1st Cir. 1990) .......................................................... 12

*Neitzke v. Williams,*
    490 U.S. 319 (1989) ........................................................................ 6

*Rehaif v. United States,*
    139 S. Ct. 2191 (2019) .................................................................... 7

*Rosales-Mireles v. United States,*
    138 S. Ct. 1897 (2018) .................................................................... 7

*Sanchez* v. *Triple-S,*
    492 F.3d 1 (1st Cir. 2007) .............................................................. 12

ii

*Smith v. United States,*
    143 S. Ct. 1594 (2023) ............................................................ 5, 17

*United States v. Aleynikov,*
    676 F.3d 71 (2d Cir 2012) ........................................................ 8

*United States v. Autuori,*
    212 F.3d 105 (2d Cir. 2000) ..................................................... 12

*United States v. Berroa,*
    856 F.3d 141 (1st Cir. 2017) .................................................... 8

*United States v. Bravo-Fernandez,*
    913 F.3d 244 (1st Cir. 2019) .................................................... 8

*United States v. Countrywide,*
    822 F.3d 650 (2d Cir. 2016) ................................................. 12, 13

*United States v. Edwardo-Franco,*
    885 F.2d 1002 (2d Cir. 1989) .................................................. 16

*United States v. El Naddaf,*
    No. CR 13-10289-2-DPW, 2023 WL 2541555 (D. Mass.
    Mar. 16, 2023) ........................................................................ 4

*United States v. Guzman-Merced,*
    2020 WL 7585176 (1st Cir. 2020) ........................................... 7

*United States v. Lara,*
    970 F.3d 68 (1st Cir. 2020) ...................................................... 7

*United States v. Mayer,*
    235 U.S. 55 (1914) ................................................................. 11

*United States v. Morgan,*
    346 U.S. 502 (1954) .......................................................... 10, 11

*United States v. Nejad,*
    521 F. Supp. 3d 438 (S.D.N.Y. 2021) ...................................... 2

*United States v. Peter,*
    310 F.3d 709 (11th Cir. 2002) ............................................. 9, 11

*United States v. Rosa-Ortiz,*
    348 F.3d 33 (1st Cir. 2003) ..................................................... 9

*United States v. Saade,*
     652 F.2d 1126 (1st Cir. 1981) .......................................................... 10

*United States v. Valdes-Ayaya,*
     900 F.3d 20 (1st Cir. 2018) .......................................................... 7, 8

*United States v. Wey,*
     15-CR-611 (AJN) (S.D.N.Y. Jun. 13, 2017) ..................................... 1

## Statutes & Other Authorities:

28 U.S.C. § 2241 .......................................................................... 3, 16, 18

28 U.S.C. § 2255 .................................................................................. 18

28 U.S.C. § 2255(e) ................................................................... 3, 16, 17, 18

Rule 28(j) ......................................................................................... 17

Rule 35(b)(1) ....................................................................................... 1

Rule 59(e) ........................................................................................... 3

Rule 60(b) ........................................................................................... 3

1 Annals of Cong. 435 (1789) ................................................................. 16

Charles Doyle, CRS Report R41931, *Mail and Wire Fraud: An
     Abridged Overview of Federal Criminal Law* ............................... 10

H.R. Rep. No. 1079, 52d Cong., 1st Sess. (1892) ....................................... 6

## INTRODUCTION AND RULE 35(b)(1) STATEMENT

Justice in the Second Circuit should not come down to the luck of the draw. Had Petitioner been fortunate enough to have had the distinguished jurist Judge Alison Nathan as his judge, he would be a free man right now (and not still on Supervised Release as he writes these words) and AUSA Patel would be before the OPR facing disbarment. Petitioner is the victim of not one but two illegal searches and seizures and a secret *Silverthorne* subpoena that he was unaware of until recently. AUSA Patel has successfully fought the return of Grist Mill Capital's property in this Court by saying that they need that property for the next trial after Petitioner wins on his 2255 which is before Judge Chatigny who denied Petitioner's Motion to Suppress in 2015 well before this Court's decisions in the famous case of *In re 650 Fifth Avenue*, 934 F.3d 147 (2d Cir. 2019), or Judge Nathan's scholarly opinion in the Benjamin Wey case *United States v. Wey*, 15-CR-611 (AJN) (SDNY Jun. 13, 2017).

AUSA Patel has fought the return of the innocent Grist Mill Capital's property three times since Judge Underhill first ordered it returned in June 2015, which is discussed later in this Petition, because the illegal seizure included 15 Boxes clearly marked "Attorney-Client

1

Privileged" from Petitioner's Boston case which is the subject of this Appeal, and which would require vacating Petitioner's conviction in Boston as well as Connecticut. AUSA Patel wrongfully asserts that Judge Chatigny denying the Motion to Suppress in 2015 before *In re 650 Fifth Avenue* and *United States v. Wey* means the Search Warrant was valid – which is clearly not the case. Moreover, both of Petitioner's convictions were marred by egregious prosecutorial misconduct including numerous *Brady-Jencks-Giglio* violations. Once again, in *United States v. Nejad*, Judge Nathan required all of the prosecutors to read her Opinion for the mishandling of only one piece of *Brady* evidence:

> The Court hopes and believes that the attorneys of the United States Attorney's Office will take to heart the lessons of this case and keep in mind that the prosecutor's first duty is not to prevail in every case but to ensure "that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, (1935). *United States v. Nejad*, 521 F. Supp. 3d 438, 450 (SDNY 2021).

This is important because the District Court Judge below short-changed the Petitioner not once but twice because AUSA Patel lied to the Judge that the Petitioner was off Supervised Release, which was not true then or now as Petitioner is still on Supervised Release as of the filing of the Mandate on May 1st, 2024.

2

There is ample proof that the exercise of the Savings Clause pursuant to 28 U.S.C. § 2255(e) is appropriate here because Judge O'Toole just summarily dismissed Petitioner's Rule 60(b) filing, Rule 59(e) filing, and a Motion for a Writ of Coram Nobis that the Government never replied to and Judge O'Toole cited the First Circuit's Mandate of June 6, 2022 which is the subject of this Appeal stating that no "repackaging" of the Petitioner's 2255 would be accepted.

Unlike the defendant in *Dhinsa v. Krueger*, 917 F.3d 70 (2d Cir. 2019), Petitioner is not just "legally" innocent, he is actually and factually innocent. And unlike the defendant in *Jones v. Hendrix*, 599 U.S. 465, 143 S.Ct. 1857 (2023), the Petitioner here has followed all of the rules of 2255(e) and 2241 by filing the Petition in the District where he is being held (Connecticut) on Supervised Release. Both Judge O'Toole and the First Circuit have made it clear that they will not entertain one more 2255 from Petitioner despite his two trials in 2005 and 2008 having a dozen fundamental errors including the national record for Speedy Trial Act and Speedy Trial Clause violations. As another Boston Judge described Petitioner's case in vacating a defendant's conviction and dismissing his indictment:

3

> **It is inadequate to leave matters in this case with the observation that "the delay was unfortunate, [but] it did not impair the defense, create any undue pressure, or result in any period of incarceration." *Carpenter*, 781 F.3d at 615. The delay here did something more enervating; it deprived the defendant of his fundamental constitutional right to a speedy and public trial.**

*United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *24 (D. Mass. Mar. 16, 2023).

There is no question that Petitioner is the leading beneficiary of the Supreme Court's decisions in *Ciminelli*, *Percoco*, and *Binday* and the demise of the Second Circuit's "Right to Control Theory of Fraud", as both his Connecticut conviction and his Boston conviction were based on what he did <u>not</u> tell his alleged victims. In the Boston case, Petitioner lost $8,000,000 of client funds in the NASDAQ Dot.com Stock Market Crash of 2000, but was able to pay them back over $50,000,000 with his legal victories over Merrill Lynch and PaineWebber, so that by 2015 his clients had released him, and in several cases actually forgave him, but the civil liability is settled and yet this unlawful conviction still stands and continues to hurt Petitioner to this day.

Therefore, Petitioner is the "innocent" person that the Savings Clause was meant to protect. AUSA Patel believes that *Jones v. Hendrix*

closed the door on all "Savings-Clause" cases – but that is not true as Petitioner's case presents the exact circumstances the Supreme Court gave as an example where a court martial jury has disbanded. Both of Petitioner's jury convictions were vacated for egregious prosecutorial misconduct so Petitioner stands convicted by the First Circuit – not a jury of his peers from the District of Connecticut as required by the Vicinage Clause in *Smith v. United States,* 143 S. Ct. 1594, 1602, (2023). Additionally, a challenge to a Court's jurisdiction can be raised at any time and even for the first time at the Supreme Court according to *Arbaugh* citing *Kontrick v. Ryan*, 540 U.S. 443 (2004).

This case is not just important to Petitioner, but all *pro se* defendants in this Circuit and all innocent criminal defendants everywhere. Petitioner is especially grateful to Richard Johnson and Oscar Diaz of the Second Circuit staff that helped Petitioner get his Appeal filed and resolving issues with the ACMS PACER System. These problems have been corrected and Petitioner is grateful to all the staff of the Second Circuit that made this filing – and other *pro se* filings possible. That explains why the Panel's cite to *Neitzke v. Williams* was not just inapposite but inappropriate as well, because the Supreme Court ruled

5

in favor of the poor defendant and stated the law should be available to

the poor as well:

> Our conclusion today is consonant with Congress' over-arching goal in enacting the *in forma pauperis* statute: "to assure equality of consideration for all litigants." See H.R. Rep. No. 1079, 52d Cong., 1st Sess., 1 (1892).

> *Neitzke v. Williams*, 490 U.S. 319, 329, (1989).

> "The writ of habeas corpus commands general recognition as the essential remedy to safeguard a citizen against imprisonment by State or Nation in violation of his constitutional rights. To make this protection effective for unlettered prisoners without friends or funds, federal courts have long disregarded legalistic requirements in examining applications for the writ and judged the papers by the simple statutory test of whether facts are alleged that entitle the applicant to relief." *Morgan* at 506

6

## I.   THE MASSACHUSETTS COURT LACKED SUBJECT MATTER JURISDICTION

Recently, the First Circuit vacated the conviction of a person who pleaded guilty because the District Court may not have had jurisdiction and the indictment did not specify the exact elements of the crime. This was considered Plain Error. In *United States v. Guzman-Merced,* 2020 WL 7585176 (1st Cir. 2020), the First Circuit found there was Plain Error and reversed the 924(c) convictions of two convicted felons based on the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019). Petitioner has clearly satisfied the standards of Plain Error as stated in *United States v. Lara,* 970 F.3d 68, 84 (1st Cir. 2020):

> "[a] federal court lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law. These challenges raise a number of questions about the application of the plain error standard of review, which provides that a clear or obvious error should be corrected if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1905 (2018).

Petitioner, therefore respectfully asks this Court to review this case through the lens of recent Second Circuit, First Circuit, and Supreme Court cases. For example, as the First Circuit stated in *United States v. Valdes-Ayaya*, 900 F.3d 20 (1st Cir. 2018):

7

That leaves the fourth prong of plain error review-whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." The Supreme Court has recently made this an easy decision for us. In *Rosales-Mireles*, the Court held that, "[i]n the ordinary case, the failure to correct a [plain error] that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Id.* at 43.

The Supreme Court has also made it clear that subject matter jurisdiction can be challenged any time, even many years after a judgment had been rendered. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006). Furthermore, the First Circuit determined in *United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019), the Government failed to allege and prove at trial only one jurisdictional element of the crime so the conviction had to be set aside and the indictment had to be dismissed.

Petitioner submits to this Court that, based on the First Circuit's decisions in *Bravo-Fernandez, Tavares, United States v. Berroa*, 856 F.3d 141 (1st Cir. 2017) and especially the Supreme Court's decision in *Skilling,* the Court in Boston lacked jurisdiction because Petitioner's indictment lacked all five essential elements of the Mail and Wire Fraud statutes, and therefore the Petitioner's conviction should be set aside based on *United States v. Aleynikov*, 676 F.3d 71 (2d Cir 2012), which in

8

turn was based largely upon the First Circuit's decision in *United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003), which was based on *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002), which in turn was based on the Supreme Court's decision in *Cleveland v. United States*, 531 U.S. 12 (2000), **which was also the basis** for the Supreme Court's recent unanimous decisions in *Kelly* and *Ciminelli*.

The reason the District Court in Boston did not have jurisdiction is because just like in *Aleynikov*, and *Rosa-Ortiz*, the alleged conduct described in the Indictment did not establish a federal crime. It is black-letter law that a defective indictment does not invoke the jurisdiction of the federal courts and any decision by a court that lacks jurisdiction is a nullity and is void as a matter of law.

In his highly regarded report to Congress on Mail & Wire Fraud, Charles Doyle of the Congressional Research Service, states that all five elements of Mail & Wire Fraud must be alleged in an indictment and **proven beyond a reasonable doubt** before someone can be convicted:

(1) Used either mail or wire communications **in the foreseeable furtherance**,

(2) of a **scheme to defraud**,

(3) involving a **material** deception,

(4)     with the **intent to deprive** another of,

(5)     either **property** or honest services.

See CRS Report R41931*, Mail and Wire Fraud: An Abridged Overview of Federal Criminal Law*, by Charles Doyle.

Failure to properly allege each and every one of these five elements with sufficient facts renders an indictment facially invalid and does not properly invoke the jurisdiction of the federal courts.

Therefore, as with the defendants in *Bravo-Fernandez*, Petitioner's conviction should be set aside. Petitioner's Indictment is also devoid of any *specific* intent to defraud, or the required "tangible economic harm." In fact, the words "*mens rea*," "scienter," and even the "specific intent to defraud" are nowhere to be found in the Indictment, even though those words are required by the US Attorney's Manual and by Justice Breyer in his Opinion in *Ruan* for a unanimous Court.

As the First Circuit stated in *Rosa-Ortiz*, "a federal court has jurisdiction to try criminal cases only when the information or indictment alleges a violation of a valid federal law. *United States v. Saade*, 652 F.2d 1126, 1134 (1st Cir. 1981)." *See Peter, citing United States v. Morgan*, 346 U.S. 502 (1954), where the Eleventh Circuit made it clear that:

"**When a court without jurisdiction convicts and sentences a defendant, the conviction and sentence are void from their inception and remain void long after a defendant has fully suffered their direct force**." *Peter* at 715.

Significantly, none of the mailings or wires were done or caused by Petitioner, and none of the mailings and wires were done in *furtherance* of any scheme to defraud. Only a select set of frauds reach the level required for a prosecution. Specifically, in this case, the Government failed to allege all five elements necessary to invoke a federal court's jurisdiction. For example, the words "in furtherance" are nowhere to be found in Petitioner's 2004 Indictment.

A challenge to a court's jurisdiction can never be waived or forfeited. *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). Certain constitutional challenges asserting a "right not to be hauled into court" cannot be waived even through a guilty plea. *Blackledge v. Perry*, 417 U.S. 21, 31 (1974).

This jurisdictional defect cannot be waived or ignored. See e.g, *United States v. Morgan*, 346 U.S. 502 (1954), a case where someone challenged the jurisdiction of the court even after serving his sentence, citing *United States v. Mayer*, 235 U.S. 55 (1914), that this type of "jurisdictional error" has been historically recognized as the most

11

"fundamental" of all fundamental errors. In fact, a judgment by a district court that lacks jurisdiction is null and void as a matter of law.

Accordingly, the Court in Boston lacked jurisdiction because the Petitioner's Indictment does not even sufficiently allege a breach of contract, much less any crime in Massachusetts. Not all frauds rise to the level of Federal Mail and Wire fraud.

The now-famous *Countrywide* decision by this Court was largely based on two seminal cases from the First Circuit, which Petitioner had actually cited several times in his Boston case: *McEvoy Travel v. Heritage Travel,* 904 F.2d 786, 791-92 (1st Cir. 1990) ("the common law requires proof--other than the fact of breach-that, at the time a contractual promise was made, the promisor had no intent ever to perform the obligation.") *United States v. Countrywide,* 822 F.3d 650 (2d Cir. 2016), *at* 660, and *Sanchez* v. *Triple-S,* 492 F.3d 1, 11 (1st Cir. 2007), stating:

> **A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes**. *See, e.g., United States* v. *Autuori,* 212 F.3d 105, 118 (2d Cir. 2000)....We nevertheless observed that "[i]t would be a truly revolutionary change to make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who-a jury might find-secretly harbored in his heart the hope that the buyer would never ask." *Id.*.

This Court posited the central issue in *Countrywide* as what constitutes fraud in the case of a contract and illustrates the fundamental difference between a mere breach of contract and a fraud: the intention of the breaching party to perform at the time of entering into the agreement, as opposed to a contracting party who never intended to perform at the outset (which is fraud). *Countrywide* at 656.

This Court further emphasized **that regardless of how serious, intentional, or malicious the breach, it is not fraudulent, absent that intention not to perform on the promise when it was made.** *Countrywide* at 661. To hold to the contrary, this Court explained, would vitiate the common law's tolerance and encouragement of "efficient breaches." In other words, common law gave parties to a contract two choices: either comply with the obligations of a contract or breach it and answer in damages. Therefore, this Court held that breaches of contract do not constitute a "scheme to defraud" under the mail and wire fraud statutes, absent a fraudulent intent at the time the contract was made.

But in Petitioner's case, the Government has punished an innocent man for "otherwise innocent conduct" that Petitioner did not cause and

could not possibly foresee in 2000 to be criminal. See *U.S. v. Cleveland*, 531 U.S. 12 (2000), as quoted in *Ciminelli*, *Kelly*, and *Skilling*.

## II. THE SUPREME COURT'S DECISION IN *SMITH v. UNITED STATES* REQUIRES THIS COURT TO VACATE PETITIONER'S CONVICTION FOR VIOLATIONS OF THE VICINAGE CLAUSE

The Indictment in the Boston case was clearly constitutionally defective for a number of reasons, and both jury verdicts were thrown out for egregious prosecutorial misconduct. But if there was no crime committed at all based on *Ciminelli*, *Skilling*, and *Abdelaziz* then Petitioner's trial in Boston also violated the Vicinage Clause of the Constitution as described in *Smith*, because there was no "crime" at all committed in the District of Massachusetts.

Furthermore, virtually all Constitutional scholars cite Benjamin Franklin's Maxim "That it is better to let 100 Guilty Persons escape rather than One Innocent Person suffer" – as the source and support for most of the "guaranteed" Constitutional protections for criminal defendants written into the Constitution and the Bill of Rights:

> That it is better 100 guilty Persons should escape, than that one innocent Person should suffer, is a Maxim that has been long &

14

generally approv'd, never that I know of controverted.

Respectfully, Petitioner suggests to this Court that for the past 20 years he has played the role in Boston of the "One Innocent Person" that Benjamin Franklin warned we should not let suffer. But even assuming *arguendo* that Petitioner was "guilty as sin" as the Government in both Connecticut and Boston still suggests – whatever Petitioner did or failed to do – he did in Connecticut. And this is what the Supreme Court said recently in 2023 in *Smith*, describing the history of the Vicinage Clause, which requires this Court to vacate Petitioner's conviction and forever end the Government's bogus claims of "repackaging" the dozen major constitutional violations that occurred in Petitioner's Boston case over the past 20 years:

> There is no question that the founding generation enthusiastically embraced the vicinage right and wielded it "as a political argument of the Revolution." Prior to the Revolution, Parliament enacted measures to circumvent local trials before colonial juries, most notably by authorizing trials in England for both British soldiers charged with murdering colonists and colonists accused of treason. The Declaration of Independence also denounced these laws, under which, it said, British soldiers were "protect[ed] ... by a mock Trial" and colonists were "transport[ed] ... beyond the Seas to be tried for pretended offences." The common-law vicinage right, both as a jury requirement and as a proxy for venue, remained prominent during debates over the ratification of the Constitution. As originally proposed, the Constitution contained only the Venue Clause, which, as noted, says nothing about jury composition. Appealing to

"ancient common law," Anti-Federalists objected to this omission. After the ratification of the Constitution, Congress yielded in part to the Anti-Federalists' argument and included a vicinage right in the Sixth Amendment. James Madison's initial draft of the Amendment required a jury "of the vicinage," 1 Annals of Cong. 435 (1789), **but Congress amended that language so that it guaranteed a jury from the State of the crime and from any smaller judicial districts that Congress chose to create.** *Smith v. United States*, 143 S. Ct. 1594, 1604–06, (2023).

## III.   PETITIONER'S APPEAL SATISFIES ALL OF THE CRITERIA UNDER THE SAVINGS CLAUSE OF 28 U.S.C. § 2255(e)

"When reviewing a District Court's dismissal of a U.S.C. § 2241 Petition," this Court "examine[s] both the merits of the Petition and the questions concerning subject matter jurisdiction de novo." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004). "The Supreme Court and Courts of Appeal, including this Court, have emphasized that…Justice must satisfy the appearance of Justice." *United States v. Edwardo-Franco*, 885 F.2d 1002, 1005 (2d Cir. 1989). Neither Justice … nor the "appearance" of justice will be served if Judge Meyer's summary dismissal is allowed to stand without this Court's review. Petitioner's Appeal raises important issues for the whole Nation for the very reasons

16

cited by AUSA Patel after *Jones v. Hendrix*, and unlike the Defendant in *Jones*, Petitioner satisfies all of the criteria of 28 U.S.C. § 2255(e).

In Petitioner's Boston case, the Government unlawfully seized 14 boxes of documents clearly marked "Attorney Client Privileged" during an illegal search and seizure from April 2010 that is still *sub judice* before this Court. As Judge Underhill noted in one of his several opinions ordering the return of property starting in June 2015:

> The plaintiffs, including un-indicted party Grist Mill Capital, allege that since the 2010 search, only four of the boxes have been returned. The Government alleges that "with the exception of two boxes," all other bankers' boxes "are now in the possession of Daniel Carpenter or his attorneys."
>
> **The plaintiffs contest that characterization, arguing that the Government has provided copies of their files, as opposed to returning the original files themselves, which include business records and documents, client files, and privileged attorney-client communications related to a separate criminal matter against Carpenter in the U.S. District Court for the District of Massachusetts, *United States v. Daniel Carpenter,* 1:04–cr–10029 (GAO).** (The Boston case of *U.S. v. Carpenter).*

In his Rule 28(j) letter to this Court in that case, AUSA Patel admitted in 2019 that there were boxes of evidence seized from Petitioner's private office (where even Judge Chatigny ruled that he had a Right to Privacy). AUSA Patel admitted in his Rule 28(j) letter that

17

some of the evidence was seized from Petitioner's office in 2010 and again from the law office of Halloran & Sage using AUSA Novick's secret *Silverthorne* subpoena – and was used at Petitioner's trial, but it was only a "small" amount of evidence, so it should "not be a problem".

Therefore, Petitioner satisfies all possible requirements for a 2241 Habeas Corpus Petition pursuant to the "Saving Clause" of 28 U.S.C. § 2255(e):

1. Petitioner is still on Supervised Release;

2. He has continuously proclaimed and proven his actual innocence based on recent Supreme Court rulings;

3. There were numerous fundamental constitutional errors in both of his trials where the jury verdicts of 2005 and 2008 were both vacated for egregious prosecutorial misconduct;

4. There have been major changes in the law of Mail & Wire Fraud announced by the Supreme Court in several cases that establish Petitioner's actual innocence since his last § 2255 Petition;

5. The First Circuit and the District Court in Boston have made it clear that they refuse to review any new § 2255 filings from Petitioner, so Petitioner's filing of a new § 2255 petition there would be functionally useless, futile, and clearly "ineffective" under § 2255(e).

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant the Motion for

Rehearing en banc.


Dated:      Simsbury, Connecticut
            May 6, 2024

Respectfully Submitted,
Daniel E. Carpenter
Petitioner, *pro se*

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT.
06092-

19

## CERTIFICATE OF COMPLIANCE

1.     This Petition complies with the type-volume limitation of

Fed. R. App. P. 35(b)(2)(A) because this Petition contains 3,892 words,

excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This Petition complies with the typeface requirements of

Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App.

P. 32(a)(6) because:  this Petition has been prepared in proportionately

spaced typeface using Microsoft Word in 14-point Times New Roman

font.

Dated: Simsbury, Connecticut
May 6, 2024

Respectfully Submitted,
Daniel E. Carpenter
Petitioner, *pro se*

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
 West Simsbury, CT. 06092

**CERTIFIED COPY OF ORDER**

D. Conn.
23-cv-719
Meyer, J.

# United States Court of Appeals

### FOR THE
### SECOND CIRCUIT

————————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of April, two thousand twenty-four.

Present:

Reena Raggi,
Beth Robinson,
*Circuit Judges,*
Jed S. Rakoff,
*District Judge.*\*

_____

Daniel E. Carpenter,

*Petitioner-Appellant,*

v.                                                                     23-6636

Jonathan Sitek, Honorable, Supervisory U.S. Probation Officer,

*Respondent-Appellee.*

_____

The Government moves for summary affirmance. Upon due consideration, it is hereby ORDERED that the motion is GRANTED because the appeal "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

_____

\* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.